# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: _____

RACHEL INGALLS, an individual,

    Plaintiff,

v.

FARO CAPITAL GROUP, LLC, a Delaware limited liability company; and
RANDALL D. KENWORTHY, an individual,

    Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Rachel Ingalls ("Plaintiff"), through counsel, Lewis Kuhn Swan PC, complains as follows:

## JURISDICTION AND VENUE

1. This Court has original federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff alleges claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1).

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims that they form part of the same case or controversy.

3. Defendant Faro Capital Group, LLC ("Faro") is subject to personal jurisdiction in Colorado because it conducts substantial business in this State and the acts and omissions alleged herein occurred in this State.

4. Defendant Randall D. Kenworthy ("Mr. Kenworthy") is subject to personal jurisdiction in Colorado because, among other things, he implemented the relevant pay practices in this State.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

6. Plaintiff is an individual who is domiciled and resides in Colorado Springs, Colorado.

7. Faro is a Delaware limited liability company maintaining its principal place of business in Greenwood Village, Colorado.

8. Mr. Kenworthy is, upon information and belief, the chief executive officer of Faro.

9. Mr. Kenworthy is, upon information and belief, domiciled and resides in the State of Colorado.

10. Upon information and belief, Mr. Kenworthy is, and at all points relevant to this Complaint has been, responsible for Faro's pay practices and exercises substantial control over its finances and operations. As such, he is individually liable for Faro's illegal pay practices as alleged herein pursuant to the FLSA and EPA.

11. Mr. Kenworthy is also individually liable for Faro's tortious conduct under the doctrine of corporate veil piercing because, on information and belief, he:

   a. Exercises substantial control over Faro's assets and activities;

   b. Has personal interests that are the same as – or substantially identical to – Faro's corporate interests;

c. Has intermingled his personal assets with Faro's assets as demonstrated by his history of financial improprieties, Securities and Exchange Commission ("SEC") proceedings, and SEC fines; and

d. Has repeatedly used the corporate form to engage in malfeasance and evade individual liability for rightful claims as demonstrated by his creation of multiple "shell" companies.

12. Faro and Mr. Kenworthy are collectively referred to as "Defendants."

## GENERAL ALLEGATIONS

13. Plaintiff was hired by Defendants as an executive assistant on or around July 3, 2017 and left her employment in or around August 2019.

14. Plaintiff's July 3, 2017 offer of employment letter ("Offer Letter") for the position of executive assistant stated: "This position is classified as non-exempt, meaning that you may be eligible for overtime compensation at 1.5 times your regular rate of pay for hours worked in excess of forty (40) during a single workweek."

15. The Offer Letter also stated that Plaintiff would be eligible for one week of severance pay per full year of employment if her employment was terminated without cause.

16. Plaintiff's job duties as an executive assistant included, among other things, managing the CEO's calendar, coordinating travel, preparing meeting rooms, creating documents, and running errands for the CEO.

17. At all relevant times, Faro properly classified Plaintiff as an employee.

18. As an executive assistant, Plaintiff was non-exempt under the FLSA and the Colorado Minimum Wage Order.

19. Plaintiff routinely worked over forty (40) hours per workweek and often over fifty (50) hours per workweek in her role as an executive assistant.

20. Faro failed to pay Plaintiff overtime compensation for all hours worked over forty (40) in any workweek.

21. Faro had in place inadequate timekeeping methods for tracking and recording the time Plaintiff spent working.

22. Throughout all relevant time periods, Faro failed to maintain accurate and sufficient time records and endeavored to maintain opacity in its pay practices.

23. Defendants' violations of the FLSA and the Colorado Minimum Wage Order were willful. Mr. Kenworthy and other Faro employees, including Michelle Mayfield, Faro's Chief Financial Officer, were aware of Faro's legal obligation to pay overtime compensation because, among other things, these issues were brought to their attention.

24. In or around June 2018, Defendants, through Ms. Mayfield, offered to promote Plaintiff to the position of Director of Operations and Investor Relations ("DOIR").

25. Ms. Mayfield relayed Defendants' promotion offer to Plaintiff in an email (the "Offer Email") sent to Plaintiff in or around June 2018. On information and belief, Defendants possess or have access to the Offer Email, which was sent using Microsoft Outlook and stored in Defendants' Global Relay system.

26. In the Offer Email, Ms. Mayfield told Plaintiff that she was being promoted to the position of DOIR. Ms. Mayfield further informed Plaintiff that if she accepted the offer, Plaintiff's annual salary would increase to $85,000 and she would receive a $75,000 bonus upon attaining a performance metric based on "meeting her deliverables" (the "Deliverables Metric").

27. The Deliverables Metric was a subjective metric measured by how effectively Plaintiff performed at making Faro an attractive investment vehicle. The determination of whether Plaintiff attained the Deliverables Metric was to be made by Mr. Kenworthy.

28. Based on her conversations with Mr. Kenworthy, Ms. Mayfield, and other Faro employees, Plaintiff understood that she could meet the Deliverables Metric by making substantial contributions to Faro's growth, efficiency, and value. Such contributions would make Faro more attractive – and more valuable – to potential investors and purchasers.

29. The Offer Email contained no mention of any financing condition on Plaintiff's salary increase or bonus. The only condition mentioned in the Offer Email was Plaintiff's attainment of the Deliverables Metric.

30. In reasonable reliance on Defendants' promises of increased compensation, Plaintiff, in or around June 2018, accepted Defendants' offer of promotion to DOIR. Plaintiff manifested her acceptance verbally by informing Ms. Mayfield in person that she accepted the promotion offer.

31. After Plaintiff accepted Defendants' promotion offer, Ms. Mayfield sent an email to Faro's Controller, Russ Kupfer, memorializing Plaintiff's acceptance and the agreement arising therefrom (the "Raise and Bonus Agreement"). On information and belief, Defendants possess or have access to this email, which was sent in or around June 2018 using Microsoft Outlook and stored on Defendants' Global Relay system.

32. In June 2018, Plaintiff's annual base salary as DOIR was $85,000.

33. Prior to Plaintiff's promotion, the DOIR position – or its equivalent – was filled by a male, Colin Miller.

34. Mr. Miller's annual base salary as DOIR, or in an equivalent role, was $120,000, which was $35,000 more than Plaintiff's base salary.

35. Plaintiff's job responsibilities as DOIR were similar to, if not broader than, Mr. Miller's.

36. Plaintiff was at least as qualified for the DOIR position as Mr. Miller and, based on her professional experience, training, and achievements, was an objectively superior candidate.

37. Plaintiff's performance as DOIR was exceptional as demonstrated by her subsequent promotions:

   a. In December 2018, Plaintiff became the acting president of Faro Energy, Inc., a company created by Mr. Kenworthy and affiliated with Faro; and

   b. In April 2019, Plaintiff became the Secretary of the Board of Directors of Faro Energy, Inc.

38. Despite receiving several promotions, and becoming the acting president of Faro Energy, Inc., Plaintiff's base salary remained at $85,000 from June 2018 until her employment with Faro ended in August 2019.

39. By in or around December 2018, Plaintiff had met the Deliverables Metric. Plaintiff's attainment of the metric was evidenced by:

   a. Her successful efforts to make Faro's operations more efficient by doing away with ineffective systems;

   b. Her key role in transforming Faro into a profitable, $300 million "waste-to-energy" company;

   c. Her key role in eliciting a $1 billion purchase offer from a potential buyer; and

6

       d. The fact that in or around December 2018, Mr. Kenworthy explicitly told Plaintiff that she had attained the Deliverables Metric.

40. Despite having attained the Deliverables Metric, Plaintiff did not receive the $75,000 owed to her under the Raise and Bonus Agreement.

41. After her employment ended in August 2019, Plaintiff received only a partial final paycheck from Faro.

42. Faro has failed to compensate Plaintiff for (i) a number of hours worked, totaling at least $2,579.63 in unpaid wages; (ii) 10 hours of accrued paid time off; (iii) two weeks of severance pay, pursuant to the Offer Letter; (iv) and the promised $75,000 bonus.

## FIRST CLAIM FOR RELIEF
### FAIR LABOR STANDARDS ACT (29 U.S.C. §§ 206(a)(1), 207(a)(1))
*Against All Defendants*

43. All preceding paragraphs are incorporated.

44. At all relevant times, Faro was an employer engaged in interstate commerce within the meaning of the FLSA.

45. At all relevant times, on information and belief, Faro has had gross annual revenues exceeding $500,000.

46. At all relevant times, Mr. Kenworthy was an employer engaged in interstate commerce within the meaning of the FLSA.

47. At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA.

48. As an executive assistant, Plaintiff frequently worked over forty (40) hours per workweek and was thus entitled to overtime compensation at a rate of not less than one-and-one-half her regular rate of pay.

49. Because Plaintiff did not receive all overtime compensation to which she was entitled, Defendants violated the FLSA.

50. Defendants have failed to make, keep, and preserve records with respect to Plaintiff sufficient to determine her wages, hours, and other conditions and practices of employment in violation of the FLSA.

51. Defendants' violations of the FLSA were willful because, among other things, they were well aware of their legal obligations to pay overtime compensation as stated in Plaintiff's July 3, 2017 Offer of Employment Letter.

52. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

53. Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants unpaid overtime compensation, actual and liquidated damages, including Faro's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees, costs, and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**EQUAL PAY ACT (29 U.S.C. § 206(d)(1))**
*Against All Defendants*

54. All preceding paragraphs are incorporated.

55. At all relevant times, Defendants employed Plaintiff within the meaning of the EPA.

56. Plaintiff, while working in the DOIR role, was paid substantially less than her male predecessor who occupied the same role or one that was equivalent.

57. Plaintiff and her male predecessor shared similar responsibilities, the performance of which required equal skill and effort, and which were performed under similar working conditions.

58. Section 206(d)(1) of the EPA makes it unlawful for an employer "to discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, efforts, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex."

59. Because of her sex, Plaintiff was paid less than her male predecessor.

60. The discrepancy in pay between Plaintiff and her predecessor in the DOIR position was not attributable to seniority, merit, performance, or any other differential other than sex.

61. The foregoing conduct, as alleged, constitutes a willful violation of the EPA.

62. Due to Defendants' EPA violations, Plaintiff is entitled to recover from Defendants economic and non-economic damages, together with liquidated damages and other available relief, to include her costs and attorneys' fees.

### THIRD CLAIM FOR RELIEF
### COLORADO MINIMUM WAGE ORDER (7 CCR § 1103-1)
*Against Faro*

63. All preceding paragraphs are incorporated.

64. At all relevant times, Plaintiff was employed by Faro within the meaning of the Colorado Minimum Wage Order.

65. Faro is covered under the Colorado Minimum Wage Order as it is a retail and service entity.

66. Faro violated the Colorado Minimum Wage Order by failing to pay Plaintiff, as an executive assistant, for all overtime hours at the required rate as prescribed by the Colorado Minimum Wage Order.

67. Plaintiff is entitled to recover from Faro proper compensation for all hours worked (including overtime compensation at the appropriate premium for hours worked over forty (40) in a workweek or twelve (12) in a work day), any statutory penalties, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees, costs, and disbursements of this action, pursuant to the Colorado Wage Order.

**FOURTH CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
*Against All Defendants*

68. All preceding paragraphs are incorporated.

69. Defendant's offer to employ Plaintiff, as related in the July 2017 Offer Letter, and Plaintiff's acceptance thereof, created a binding contract between Plaintiff and Defendants

70. Defendants breach this agreement by, among other things, failing to compensate Plaintiff for the two weeks of severance pay she was entitled to.

71. Defendants' offer to promote Plaintiff to DOIR, as related in the June 2018 Offer Email, and Plaintiff's acceptance thereof, created a binding contract between Plaintiff and Defendants.

72. Defendants breached this agreement by, among other things, failing to compensate Plaintiff according to the terms set forth therein.

73. Plaintiff performed, or is excused from performing, all of her obligations under the agreements.

74. Plaintiff has suffered damages as a result of Defendants' breach of contracts in an amount to be proven at trial for which Defendants are liable.

**FIFTH CLAIM FOR RELIEF**
**PROMISSORY ESTOPPEL**
*Against All Defendants*

75. All preceding paragraphs are incorporated.

76. Defendants promised to pay Plaintiff a bonus of $75,000 if she accepted Defendants' offer of promotion to DOIR as conveyed in the Offer Email.

77. Plaintiff reasonably relied on this promise, which was made both orally and in writing, by, among other things, declining to obtain more financially lucrative employment and by continuing to labor for Defendants.

78. Defendants' promises must be enforced to prevent injustice to Plaintiff.

**SIXTH CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
*Against All Defendants*

79. All preceding paragraphs are incorporated

80. Plaintiff conferred a benefit on Defendants, namely by providing Defendants with many hours of her (now known to be) underpaid labor.

81. Allowing Defendants to retain this benefit without proper payment therefor would serve to unjustly enrich Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

a) Judgment in her favor on her claims for relief;

b) A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the Colorado Wage Order;

c) An injunction requiring Defendants to cease their unlawful practices under, and to comply with, the Colorado Wage Order;

d) An award of overtime compensation due under the FLSA and the Colorado Wage Order;

e) An award of liquidated and/or punitive damages as a result of Defendants' willful failure to properly compensate Plaintiff pursuant to 29 U.S.C. § 216;

f) An award of damages representing the employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

g) A declaratory judgment that the practices complained of herein are unlawful under the EPA;

h) An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to properly compensate Plaintiff pursuant to the EPA;

i) Compensatory and equitable damages for Plaintiff's breach of contract, promissory estoppel, and unjust enrichment claims;

j) An award of pre-judgment and post-judgment interest;

k) An award of costs and expenses of this action together with reasonable attorneys' and expert witness fees; and

l) Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 15th day of January, 2020.

>	*/s/ Andrew E. Swan*
>	Paul F. Lewis
>	Michael D. Kuhn
>	Andrew E. Swan
>	LEWIS | KUHN | SWAN PC
>	620 North Tejon Street, Suite 101
>	Colorado Springs, CO 80903
>	Telephone:  (719) 694-3000
>	Facsimile:   (866) 515-8628
>	plewis@lks.law
>	mkuhn@lks.law
>	aswan@lks.law
>
>	*Attorneys for Plaintiff*